**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Veronica O. Wolfchief,<br><br>  Plaintiff,<br><br>v.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>  Defendant. | No. CV-12-0455-PHX-DGC<br><br>**ORDER** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Veronica O. Wolfchief ("Plaintiff" or "the claimant") seeks judicial review of the Commissioner's decision finding her not disabled within the meaning of the Social Security Act. For the reasons that follow the Court will deny Plaintiff's appeal.

**I.  Background.**

Plaintiff applied for disability insurance benefits and supplemental security income in April 2010. Doc. 14 at 2. She alleged that she was disabled as a result of multiple conditions beginning on February 1, 2009. Doc. 17 at 2. Her applications were twice denied and upon further review an Administrative Law Judge ("ALJ") issued an opinion that she was not disabled. *Id.* That decision was ratified and became the Commissioner's final decision. Doc. 14 at 3.

**II.  Legal Standard.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

1  880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but
2  less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept
3  as adequate to support a conclusion." *Id.*  In determining whether the decision is
4  supported by substantial evidence, the Court must consider the record as a whole,
5  weighing both the evidence that supports the decision and the evidence that detracts from
6  it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence
7  to support the Commissioner's determination, the Court cannot substitute its own
8  determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III.  Analysis.**

For purposes of Social Security benefits determinations, a disability is

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Determining whether a claimant is disabled involves a sequential five-step evaluation process. The claimant must show (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. If the claimant establishes his burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date through the date of his decision. Tr. at 20. At step two, the ALJ found that Plaintiff suffered from lupus, hypertension, hepatitis C, carpal tunnel syndrome, and lumbar degenerative disc disease which in combination were severe

within the meaning of the regulations. Tr. at 20. At step three, the ALJ found that the combination of impairments did not meet or equal one of the listed impairments. Tr. at 22; *see* C.F.R. pt. 404, subpt. P, app. 1. The ALJ discounted medical opinions of two treating physicians and determined that Plaintiff had the residual functional capacity to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with some additional limitations. With those limitations, the ALJ found that Plaintiff had sufficient residual capacity to perform her past relevant work as a cashier. Tr. at 22-26. Because he found that Plaintiff could perform her past relevant work, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. at 22-26.

Plaintiff challenges the conclusions of the ALJ on two grounds. First, she contends that the ALJ improperly discounted the opinion of two doctors that testified she was substantially more limited than the ALJ concluded. Second, Plaintiff argues that the ALJ improperly discounted her subjective testimony. The Court will consider each argument in turn.

### A.  Medical Opinion of Dr. Onisile.

Dr. Olu Onisile is one of Plaintiff's treating physicians. While the "ALJ must consider all medical opinion evidence," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), "[t]he medical opinion of a claimant's treating physician is entitled to 'special weight,'" *Rodriquez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). The ALJ may reject the opinion of a treating or examining physician by making "'findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (internal citation omitted). Furthermore, where the treating physician's opinion is not contradicted by another physician, the ALJ's reasons for rejecting the opinion must be "clear and convincing." *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); *see Lewis v. Apfel*,

1  236 F.3d 503, 517 (9th Cir. 2001) ("[A]n ALJ may reject a treating doctor's medical
2  opinion, if no other doctor has contradicted it, only for 'clear and convincing' reasons
3  supported by substantial evidence.") (citing *Reddick*, 157 F.3d at 725).

4  Dr. Onisile has met with Plaintiff once a month since June 24, 2009. Tr. at 518.
5  The ALJ considered Dr. Onisile's treatment notes (Tr. at 402-39, 462-73, 534-63), a note
6  Dr. Onisile wrote on February 15, 2010 (Tr. at 513), and the Multiple Impairment
7  Questionnaire form that Dr. Onisile submitted on September 17, 2010 (Tr. at 518-25).
8  The ALJ noted Dr. Onisile's opinion that Plaintiff's multiple conditions cause her
9  considerable pain and physical limitations. Tr. at 24. Dr. Onisile concluded his note with
10 his opinion that Plaintiff could not work for at least the next year. Tr. at 513. In the
11 questionnaire, Dr. Onisile reported that Plaintiff suffered from chronic pain that was
12 constant and limited her to sitting for one to two hours and standing or walking for less
13 than one hour during an eight hour workday. Tr. at 520. It also stated that Plaintiff was
14 markedly limited in her ability to use her hands and was "incapable of even low stress
15 jobs." Tr. at 522-23.

16 The ALJ gave "little weight" to Dr. Onisile's opinion because "it heavily favors
17 the claimant's subjective complaints and is inconsistent with the objective findings, other
18 opinion evidence and the record as a whole, including Dr. Onisile's own treatment
19 notes." Tr. at 25. The ALJ engaged in a fairly detailed analysis of the treatment notes
20 and the reports from the objective tests. Tr. 23-25. The ALJ cited extensively from the
21 record and found that the treatment notes "repeatedly and consistently report the claimant
22 is 'stable' and 'ambulatory,' with 'no change' in her condition and with 'within normal
23 limits' physical examinations." Tr. at 23. The ALJ noted that claimant reported a "0" on
24 a "1-10" pain scale in September 2009 (Tr. at 265) and that the record contains an April
25 2009 note of a reported decrease in back pain (Tr. at 386).

26 The ALJ also found evidence that the course of treatment was particularly
27 conservative – mostly routine visits to refill prescriptions with a primary care physician –
28 and opined that such a course of treatment does not seem consistent with the levels of

disability that Plaintiff claims and Dr. Onisile reported.  Tr. at 24.  Specifically, the ALJ identified a notation by Dr. Onisile that Plaintiff was "still not in to see hand surgeon or neurosurgeon," (Tr. at 537), which the ALJ understood to imply that the condition was "not so severe as to warrant immediate surgical intervention, or the claimant's attempt at pursuing additional methods of treatment."  Tr. at 24.  The ALJ also found that the treatment notes confirm an unchanging regimen of medication and treatment which suggests that the regimen is effective.  Tr. at 24.

The ALJ's review of the reports of physical examinations and objective medical tests also buttressed his conclusion that Dr. Onisile's ultimate conclusion was unsubstantiated.  The ALJ cited objective tests that showed Plaintiff had only mild and moderate degenerative disc disease, mild distal sensory neuropathy, unremarkable results on hip X-rays, and no evidence of acute intracranial abnormality.  Tr. at 360-64, 444, 514-17, 544.  Physical examinations revealed Plaintiff was "normal," "within normal limits," and "unremarkable."  Tr. at 478-500, 534-63, 567-82.  Tests of muscles, gait, range of motion, sensory results, and deep tendon reflexes also produced normal or unremarkable results.  Tr. at 478-500, 534-63, 567-82.

Plaintiff argues that the ALJ "cherry pick[ed] evidence in support of [his] own conclusions."  Doc. 14 at 10 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)).  Plaintiff also contends that the ALJ should not have relied on the evidence of the "0" on the pain scale because the report was from an eye exam and not relevant to the alleged impairment.  Doc. 14 at 16; Tr. at 265.  Additionally, Plaintiff contends that Dr. Onisile's testimony does not conflict with the objective tests or medical records.  Doc. 14 at 10-11.

The ALJ may discount the opinion of a treating physician by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Thomas*, 278 F.3d at 957.  This is precisely what the ALJ has done.  While the ALJ failed to notice that one particular piece of evidence – the "0" on the pain scale – was reported at an eye exam, the majority of the

- 5 -

cited evidence remains unrefuted. Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence and comports with the Ninth Circuit's requirements for discounting treating physician evidence.

### B. Medical Opinion of Dr. Wang.

Dr. George Wang, M.D., was also a treating physician and the same legal standards apply to his opinion. In January 2011, Dr. Wang submitted a Multiple Impairment Questionnaire. Tr. 526-33. Dr. Wang opined that Plaintiff could sit for two hours and stand or walk for two hours during an eight hour workday. Tr. at 528. He also concluded that Plaintiff would benefit from a sit/stand option. Tr. at 528. Dr. Wang believed Plaintiff could occasionally lift up to twenty pounds and carry up to twenty pounds frequently, (Tr. at 529) and he ultimately concluded that Plaintiff was capable of low stress jobs. Tr. at 531.

The ALJ gave Dr. Wang's opinion some weight. Tr. at 25. He accepted Dr. Wang's conclusion that Plaintiff could only occasionally lift up to twenty pounds and would benefit from a sit/stand option. Tr. at 25. Those limitations were included in the residual functional capacity calculation. Tr. at 25. The ALJ found, however, that any additional limitations were not supported by the objective medical evidence. Tr. at 25. The ALJ found that Dr. Wang's "conservative" and "routine" course of treatment was inconsistent with severe limitations. Tr. at 25.

The Court finds that the ALJ properly discounted portions of Dr. Wang's testimony. As noted above, the ALJ thoroughly reviewed the objective medical evidence and the treatment notes. Tr. at 23-24. That review revealed substantial medical and clinical evidence that conflicted with some of Dr. Wang's conclusions. "'When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict.'" *Thomas*, 278 F.3d at 957 (quoting *Matney*, 981 F.2d at 1019).

### C. Plaintiff's Subjective Complaints.

The ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's subjective testimony. "First, the ALJ must determine whether the claimant

- 6 -

has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  If the claimant meets this first test, and there is no evidence of malingering, then the ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).  The ALJ may consider at least the following factors when weighing the claimant's credibility:  the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas*, 278 F.3d at 958-59 (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789,792 (9th Cir. 1997)).

At step one, the ALJ determined that Plaintiff did suffer from lupus, hypertension, hepatitis C, carpal tunnel syndrome, and lumbar degenerative disc disease.  The ALJ concluded, however, that the "evidence indicates claimant's impairments are not as severe or as limiting as alleged."  Tr. at 23.  While "[p]ain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled," *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)(citing 42 U.S.C. § 423(d)(5)(A); *Bunnell*, 947 F.2d at 344-45), the ALJ concluded that the "record as constituted contains minimal, if any . . . supporting objective medical evidence."  Tr. at 23.

The ALJ then proceeded to the review of the treatment notes, test results, and physical exam records that the Court referenced above with regard to the rejection of Dr. Onisile's medical opinion. The general tenor of those materials suggested that the Plaintiff's impairment was mild to moderate.  Tr. at 23-24.  The conservative course of treatment and Plaintiff's failure to see a surgeon suggested that Plaintiff's condition was not as severe as she reported.  Tr. at 24.

Plaintiff contends that the ALJ mischaracterized the record when he gave little weight to Plaintiff's subjective complaints. Doc. 14 at 16. As noted above, however, the ALJ engaged in a thorough review of the record and determined that Plaintiff's subjective complaints were not credible. The ALJ gave clear and convincing reasons for his conclusion. The treatment notes show Plaintiff receiving a steady course of conservative treatment over a period of years, and show her to be stable and ambulatory with largely normal physical exams. Tests performed showed either normal conditions or mild to moderate problems, and Plaintiff appears to have taken no steps to receive greater or different treatment as would be expected if she truly were suffering from debilitating symptoms as she now contends. The Court accordingly finds the ALJ's conclusions to be supported by substantial evidence and that he did not error in discounting Plaintiff's subjective testimony.

**IT IS ORDERED** that Plaintiff's appeal of the Commissioner's decision is **denied.**

Dated this 27th day of November, 2012.

David G. Campbell
United States District Judge